UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GOOTEE CONSTRUCTION, INC.                          CIVIL ACTION

VERSUS                                                            NO. 15-3185

TRAVELERS PROPERTY CASUALTY                SECTION: R (4)
COMPANY OF AMERICA

## ORDER AND REASONS

Defendant Travelers Property Casualty Company of America moves the Court to dismiss plaintiff Gootee Construction, Inc.'s first amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]  In its first amended complaint, Gootee seeks a declaratory judgment on the issue of Travelers's duty to defend Gootee in a Louisiana state court lawsuit, damages for Travelers's alleged breach of contract in failing to defend Gootee, and statutory penalties for Travelers's alleged bad faith.[2]  For the following reasons, the Court denies the motion.[3]

## I.    BACKGROUND

This action arises out of Gootee Construction's allegedly defective subcontracting work on the "St. Mary's Construction Project," a construction project to rebuild a local high school after Hurricane Katrina.  After being sued in state court by the project's

---

[1]    R. Doc. 20.

[2]    *See generally* R. Doc. 12 at 17-18.

[3]    Because the Court rules on Travelers's motion to dismiss Gootee's first amended complaint in this order, Travelers's motion to dismiss Gootee's original complaint is denied as moot.  *See* R. Doc. 10.

1

general contractor and denied a defense by its insurance company, Gootee filed this declaratory and breach of contract action against Travelers, alleging Travelers breached its duty to defend Gootee in the underlying litigation.

### A.      The Underlying St. Mary's Litigation

According to Gootee's complaint, St. Mary's Academy contracted with Satterfield & Pontikes Construction Group, LLC ("Satterfield") in October 2009 to rebuild part of St. Mary's high school campus after Hurricane Katrina.[4]   Satterfield hired Gootee as a subcontractor to perform the heating, ventilating, air conditioning, and plumbing work on the St. Mary's Construction Project.[5]  After St. Mary's declared the project substantially complete in February 2011, it failed to pay Satterfield the full contract price for the work. Satterfield, in turn, failed to pay Gootee its full subcontract price.[6]

In June 2011, Gootee sued St. Mary's and Satterfield in state court, seeking to recover the remainder of the subcontract price for Gootee's construction work.[7]  St. Mary's then sued Satterfield, alleging that Satterfield and its subcontractors failed to perform their work on the St. Mary's Construction Project in a "good and workmanlike manner."[8]

---

[4]      *See* R. Doc. 12 at 3 ¶ 8.

[5]      *Id.*

[6]      *Id.* at 4 ¶¶ 14-18.

[7]      *Id.* at 5 ¶ 20.

[8]      *Id.* at 12.

Satterfield filed a third-party demand against Gootee, as well as other subcontractors who worked on the St. Mary's Construction Project.[9]  In its third-party demand, Satterfield alleges that Gootee must defend and indemnify Satterfield against St. Mary's claims for damages.[10]  Satterfield's state-court demand reads in relevant part:

> In October 2009, St. Mary's . . . and S&P [Satterfield] entered into a written agreement for S&P to serve as the general contractor and furnish labor, services, materials, and equipment for the construction of improvements to immovable property owned by St. Mary's on a project known as St. Mary's Permanent High School Campus . . . .
>
> S&P and each of the Subcontractors entered into a written agreement whereby each of the Subcontractors was to provide certain labor, services, materials, and/or equipment for the Project . . . all in accordance with the terms of the respective Subcontract and the Project Plans and Specifications.
>
> St. Mary's has filed suit against S&P for damages and has alleged that some part of each of the Subcontractors' work or materials is defective, incomplete, and or not in accordance with the Project Plans and Specifications, and that, as a result, St. Mary's has incurred damages or will incur damages.  Further, St. Mary's has alleged it is entitled to damages as a result of the late compensation [sic] of or delay on the Project.
>
> S&P has defended against St. Mary's suit concerning alleged delays and the defective or deficient work or work not performed in accordance with the Project Plans and Specifications. Such work includes labor, materials, equipment or work performed at least in part by each of the Subcontractors.
>
> S&P has also incurred damages as a result of delayed performance of the work on the Project.  To the extent that these damages are not recoverable against St. Mary's, each of the Subcontractors is liable to S&P for all delay damages to the extent of each Subcontractor's delayed performance of work or work caused delay.
>
> To the extent of any proven Subcontractor defective work or delay on the Project, the respective Subcontractor negligently performed its work on the Project or, in the alternative, has breached its respective Subcontract.[11]

---

9       *Id.* at 8 ¶ 35.

10      *Id.* at ¶ 36.

11      R. Doc. 12-15 at 5-6.

3

These allegations form the basis of Gootee's current claims against Travelers.

### B.    Goote's    General    Commercial    Liability    Policy    and    the    Instant Litigation

Gootee alleges that it submitted Satterfield's third-party demand against Gootee to Travelers on March 11, 2015, seeking a defense in the state-court litigation.[12]  At the time Gootee filed its complaint in this Court several months later, Travelers had not yet decided whether to defend Gootee against Satterfield.[13]

Gootee's claim for a defense by Travelers depends on a series of commercial general liability policies, all of which contain materially the same relevant provisions.[14] First, Gootee's liability policies provide that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[15]  The policies also provide that Travelers has the "duty to defend the insured against any 'suit' seeking those damages."[16]   Under the policies, "property damage" is either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured."[17]

---

[12]    R. Doc. 12 at 8 ¶¶ 39-40.

[13]    *Id.* at 9 ¶ 42.

[14]    *See generally* R. Docs. 12-1, 12-2, 12-3, 12-4, 12-5, 12-6.

[15]    *See, e.g.,* R. Doc. 12-1 at 8, § 1, ¶1(a).

[16]    *Id.*

[17]    *Id.* at 22 ¶ 17(a)-(b).

### C.    Travelers's Motion to Dismiss

Travelers now moves to dismiss Gootee's complaint under Federal Rule of Civil Procedure 12(b)(6).[18]  Though Travelers contends that three elements must be met for Gootee's insurance coverage to apply (an "occurrence" and resulting "property damage" within the policy period), the only issue presented by the motion to dismiss is whether the underlying petition against Gootee sufficiently alleges "property damage."  According to Travelers, neither Gootee's allegedly defective work nor the alleged delay of the St. Mary's Construction Project constitutes "property damage," as that term is defined by Gootee's insurance policies.[19]  Gootee opposes the motion, arguing that the underlying pleadings do not unambiguously exclude the possibility of coverage, as Travelers contends.[20]

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor

---

[18]    R. Doc. 20.  In its motion, Travelers incorporates the arguments it made in its motion to dismiss Gootee's original complaint (R. Doc. 10). *See* R. Doc. 20-1 at 1.

[19]    *See generally* R. Doc. 10.

[20]    R. Doc. 23.

of the plaintiff.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009);

*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that

the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual

allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the

elements of a cause of action.  *Id.* In other words, the face of the complaint must contain

enough factual matter to raise a reasonable expectation that discovery will reveal evidence

of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257. If there are insufficient

factual allegations to raise a right to relief above the speculative level, or if it is apparent

from the face of the complaint that there is an insuperable bar to relief, the claim must be

dismissed.  *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss for failure to state a claim, a court must typically

limit itself to the contents of the pleadings, including their attachments.  *Collins v.

Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  "If, on a motion under

12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court,

the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P.

12(d).    Nevertheless, uncontested documents referred to in the pleadings may be

considered by the Court without converting the motion to one for summary judgment

even when the documents are not physically attached to the complaint.  *See Great Plains

Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002).  The

Court may also consider documents attached to a motion to dismiss without converting

the motion into one for summary judgment if the documents are referred to in the

complaint and are central to the plaintiff's claim.  *Causey v. Sewell Cadillac–Chevrolet,

Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.   DISCUSSION

### A.   An Insurer's Duty to Defend under Louisiana Law

The parties agree, and the Court also finds, that Louisiana law applies to Gootee's claims against Travelers.

When determining an insurer's duty to defend under Louisiana law, courts apply the so-called "eight corners rule."  Under this rule, a court compares the allegations of the petition against the insured with the language of the insurance policy.  *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009); *see also Lodwick, LLC v. Chevron USA, Inc.*, 126 So.3d 544, 550 (La. App. 2 Cir. 2013) ("[Under] the 'eight corners rule' . . . an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it has a duty to defend.").  The insurer has a duty to defend its insured if the underlying petition "disclose[s] even a possibility of liability under the policy."  *Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. App. 1 Cir. 2001) (citing *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1218 (La. 1994)); *accord Martco Ltd.*, 588 F.3d at 872-73.  "In other words, the test is not whether the allegations unambiguously assert coverage, but whether they do not unambiguously exclude coverage."  *Johnson v. Misirci*, 955 So. 2d 715, 718 (La. App. 4 Cir. 2007).  Indeed, the duty to defend "exist[s] if there is at least a single allegation in the petition under which coverage is not unambiguously excluded."  *Yarborough v. Fed. Land Bank of Jackson*, 731 So.2d 482, 487-88 (La. App. 2 Cir. 1999) (collecting cases).

The court making this determination must liberally interpret the underlying petition and assume all allegations to be true.  *Martco Ltd.*, 588 F.3d at 873; *Vaughn*, 785 So. 2d at 83-84 (quoting *Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253, 259 (La.

1969)).  If the insured bears its burden of demonstrating that any allegations possibly fall within coverage, the burden shifts to the insurer to prove that the underlying petition states only facts that fall within an exclusion from coverage.  *Id.* at 872.

In determining whether Travelers has a duty to defend Gootee in the underlying state-court suit here, the Court looks only to Satterfield's third-party demand against Gootee and Gootee's insurance policy with Travelers.  Despite its apparent awareness of Louisiana's "eight corners rule," Gootee asks the Court to consider a number of extraneous documents, including opinions issued by the Orleans Parish Civil District Court, correspondence between Travelers and Gootee or Satterfield, St. Mary's expert report, and St. Mary's petition against Satterfield--none of which are cognizable in determining Travelers's duty to defend because these documents are not incorporated in the underlying petition against Gootee.  *See generally Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) ("Whether an insurer has a duty to defend is determined solely by compar[ing] the allegations in *the complaint against the insured* with the terms of the policy at issue . . . ." (emphasis added)); *Lauren Plaza Assocs., Ltd. V. Gordon H. Kolb Devs., Inc.*, 12 F.3d 208, 1993 WL 529909, at *5 (5th Cir. 1993) (refusing to consider the allegations of the complaint on which the complaint against the insured is based).

Gootee argues that Satterfield's allegation that St. Mary's incurred damages or will incur damages as a result of Gootee's allegedly defective or incomplete work discloses at least the possibility of coverage because these damages may include "property damage," as defined by its policy with Travelers.  Gootee cites two cases that support its argument.[21]

---

[21]    Gootee cites several other cases in its opposition for the idea that "a contractor's defective or substandard work is an *occurrence* for purposes of

First, in *Stewart Interior Contractors, LLC v. Metalpro Industries, LLC*, a subcontractor sued a supplier for the damages the subcontractor incurred as a result of using the supplier's allegedly defective steel studs during construction.  969 So. 2d 653, 656 (La. App. 4 Cir. 2007).  The subcontractor alleged that its damages included "the costs of the steel studs; installation, repair and removal costs; loss of income, profits, capital and monies withheld under the contract; expert, engineering, and attorney's fees, and costs associated with delays in the construction project." *Id.* at 659.  The subcontractor also alleged that the defective studs caused physical damages to sheetrock used in the construction project.  *Id.*  The Louisiana Fourth Circuit Court of Appeal rejected the insurance company's argument that the subcontractor's claims for breach of contract and redhibition damages, as a result of the defective studs, could never constitute "property damage" under the applicable policy, which defined "property damage," like Travelers does here, as "physical damage to tangible property" or "loss of use of tangible property." *See id.* at 660.

Gootee also relies on *Grimaldi Mechanical, LLC v. The Gray Insurance Co.*, 933 So.2d 887 (La. App. 4 Cir. 2006).  In *Grimaldi*, the underlying petition alleged that the insured, a mechanical contractor, damaged the property owner of a construction project by performing "nonconforming . . . and defective work" and "fail[ing] to perform the work in a thorough workmanlike manner." *Id.* at 893.  The petition against the insured also

---

triggering the initial grant of coverage and an insurer's duty to defend."  R. Doc. 23 at 11 (emphasis added).  But the issue here is not whether Satterfield's underlying petition sufficiently alleges an "occurrence" within the meaning of Gootee's insurance policy.  Rather, the issue is whether Satterfield's petition sufficiently alleges *property damage*.  Travelers does not challenge Gootee's ability to prove an occurrence.

incorporated two exhibits, the most relevant of which described the insured's "non-conforming pipe installation [that] was unacceptable due to incomplete calculations." *Id.* at 894. The court held that these allegations sufficiently alleged that "property damage," within the meaning of the insurance policy "may have occurred" or "may have arisen" and that therefore the insured could overcome the insurer's motion for summary judgment. *Id.* at 896-87. The court also noted the inherent difficulty the insured bears in "relying upon the [petition] and corresponding exhibits of an adverse party to allege that property damage may have occurred." *Id.* at 897.

The Court finds that in light of the foregoing authorities, and accepting the allegations of Satterfield's petition against Gootee as true, Gootee has plausibly alleged that he is entitled to a defense from Travelers. Although Satterfield's petition is inartfully drafted, the Court can reasonably infer from the allegations that Gootee performed subcontracting work on the St. Mary's immovable property, in connection with the reconstruction of St. Mary's high school. The allegation that St. Mary's has incurred damages or will incur damages "as a result [of]" Gootee's allegedly defective or incomplete construction work sufficiently implies that St. Mary's seeks to recover for damage to tangible property, potentially including, but not limited to, the defective work itself. *Cf. Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 873 (5th Cir. 2009) (finding "the demand for repair damages" to the defective work could "make out a claim for injury to some item of tangible property caused by the insured").

Travelers's motion to dismiss depends entirely on the argument that defective or incomplete work, in and of itself, does not constitute "property damage." Even if this is true, Satterfield's petition against Gootee at least raises the possibility that St. Mary's has suffered injury to other property "as a result [of]" Gootee's defective work, which

10

Travelers concedes would satisfy its definition of "property damage."[22]   Satterfield's failure to use the magic words "property damage" is not outcome-determinative.  *See generally City of Plaquemine v. N. Am. Constructors. Inc.*, 683 So. 2d 386, 388 (La. App. 1 Cir. 1996) (finding the absence of specific details "does not defeat [the] conclusion that the allegations state, at least rudimentarily, a claim which may be covered by the insurance contract").  As the Fifth Circuit holds,

> The scope of the duty to defend is interpreted broadly: Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.

*Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612-13 (5th Cir. 2012).[23]

Accordingly, the Court finds that Gootee has plausibly alleged that Travelers owes it a duty to defend because there may be "at least a single allegation in the [underlying] petition under which coverage is not unambiguously excluded."  *See Yarborough v. Fed. Land Bank of Jackson*, 731 So.2d 482, 487-88 (La. App. 2 Cir. 1999) (collecting cases). As a result, the Court need not address the parties' arguments regarding whether Satterfield's allegations of "late completion" (incorrectly written as "late compensation"

---

[22]     *See* R. Doc. 10-1 at 14 ("As explained by Louisiana's leading insurance treatise, [t]he defective construction itself does not trigger coverage under a CGL policy.  Instead, coverage is triggered under the CGL policy in effect when that defect causes physical injury to tangible property (e.g., the roof leaks or the wall collapses).").

[23]     Though the court in *National Casualty Co.* applied Texas law, the principles of insurance law under Louisiana law are the same.  *See, e.g.*, *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 n.5 (5th Cir. 2015) ("The parties cite authority from both Texas and Louisiana in support of their respective positions . . . and we discern no substantive differences in the relevant insurance laws of the two states.").

11

in the petition) or "delay" fall under the "loss of use" definition of "property damage" in Gootee's insurance policy.

Usually, at this point, the insurer bears the burden to prove that the underlying petition states only facts that fall within an exclusion from coverage. *Martco Ltd.*, 588 F.3d at 872. But as noted, the only issue presented by Travelers's motion is whether underlying petition contained plausible allegations of "property damage. Finding that it does, the Court denies the motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Travelers's motion to dismiss.

New Orleans, Louisiana, this 15th day of April, 2016.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE